UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIMEONE INSURANCE CO.,

    Plaintiff,

Case No. 18-cv-13768
Hon. Matthew F. Leitman

v.

STOP N SHOP PETRO MART, INC.,

    Defendant.

_____/

## ORDER (1) DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION TO DISMISS (ECF No. 13) AND (2) STAYING ACTION

In May 2018, Rami Ali Jaber, an employee of Defendant Stop N Shop Petro Mart, Inc., shot and killed a man named Derek Roberts on Stop N Shop's premises. Roberts' family subsequently filed a wrongful-death civil suit against Stop N Shop in state court (the "Roberts State Court Action"). Plaintiff PrimeOne Insurance Company is Stop N Shop's insurer, and PrimeOne has been providing a defense to Stop N Shop in the Roberts State Court Action.

In this federal action, PrimeOne seeks a declaration that it has no duty to defend Stop N Shop against, and/or indemnify Stop N Shop from, losses in the Roberts State Court Action. (*See* Compl., ECF No. 1.) Stop N Shop filed a motion to dismiss PrimeOne's Complaint on April 24, 2019. (*See* Mot., ECF No. 13.) Stop N Shop argues, among other things, that this Court should exercise its discretion not to exercise jurisdiction over this declaratory judgment action.

As explained more fully below, there is an appeal currently pending in state court that relates to some of the same key issues in the Roberts State Court Action and in this action, and the resolution of that appeal may have a significant impact on this Court's analysis of whether to exercise jurisdiction over this coverage dispute. The Court therefore **DENIES** Stop N Shop's motion **WITHOUT PREJUDICE** and **STAYS** this action pending further developments in state court. Stop N Shop may re-file its motion once the state court decides the pending appeal. At that time, the Court will be best positioned to assess whether it is proper to exercise jurisdiction over this action.

# I

## A

PrimeOne is a provider of commercial insurance policies. (*See* Compl. at ¶6, ECF No. 1, PageID.3.) In 2017, PrimeOne issued an insurance policy (the "Policy") to Stop N Shop, a gas station and convenience store in Detroit, Michigan. (*See id.*) The Policy provides coverage for, among other things, "sums that [Stop N Shop] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Policy, ECF No. 1-2, PageID.87.)

The Policy excludes from coverage, among other things, bodily injuries that occur due to the intentional conduct of Stop N Shop or its employees (the "Intentional Injury Exclusion"). The Intentional Injury Exclusion provides that "[t]his insurance does not apply to '[b]odily injury' … expected or intended from the standpoint of the insured." (*Id.*, PageID.88.) But the Policy contains an exception to the Intentional

Injury Exclusion. That exception provides that "[t]his exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property" (the "Self-Defense Exception") (*Id.*) Thus, under the Self Defense Exception, Stop N Shop is entitled to coverage if one of its employees causes an intentional bodily injury while acting in self-defense.

**2**

In May 2018, Jaber shot and killed Roberts inside Stop N Shop's convenience store. (*See* Compl. at ¶7, PageID.3.) Jaber was subsequently charged with first-degree murder in the Wayne County Circuit Court. *See People v. Jaber*, Wayne Cty. Cir. Ct. Case No. 18-005065-01-FC. Jaber presented a self-defense defense, but the jury convicted him of second-degree murder. *See id.* Jaber is currently appealing his conviction in the Michigan Court of Appeals.

Roberts' family filed the Roberts State Court Action against Stop N Shop in the Wayne County Circuit Court in July 2018. *See Carnell Roberts, as Personal Representative of the Estate of Derek Roberts, Deceased v. Stop N Shop Petro Mart, Inc.*, Wayne Cty. Cir. Ct. Case No. 18-008143-NO. Stop N Shop intends to raise as one defense in the Roberts State Court Action that Jaber acted in self-defense.[1] (*See*, *e.g.*, Stop N Shop Reply Br., ECF No. 15, PageID.238-239.)

---

[1] As explained more fully below, the Roberts State Court Action is currently stayed pending resolution of Jaber's appeal of his second-degree murder conviction.

Thus far, PrimeOne has provided a defense to Stop N Shop in the Roberts State Court Action "under an express reservation of rights." (Compl. at ¶23, ECF No. 1, PageID.6.)

**C**

On December 5, 2018, PrimeOne filed a declaratory judgment action in this Court pursuant to 28 U.S.C. § 2201. (*See* Compl., ECF No. 1.) PrimeOne seeks a declaration from the Court that it has no duty to defend Stop N Shop against, and/or indemnify Stop N Shop from, losses in the Roberts State Court Action. (*See id.*, PageID.7-8.) One of PrimeOne's primary arguments in this action is that it has no duty to indemnify and defend Shop N Shop because Jaber intentionally shot and killed Roberts. (*See id.*) PrimeOne contends that under these circumstances, the Intentional Injury Exclusion bars coverage. (*See id.*) Stop N Shop counters that the Self-Defense Exception applies here – and that coverage is thus available – because Jaber shot Roberts in self-defense. (*See* Stop N Shop Reply Br., ECF No. 15, PageID.238-239.)

Whether Jaber shot Roberts in self-defense is thus a key issue in both this action and in the Roberts State Court Action.

**D**

On April 24, 2019, Stop N Shop moved to dismiss PrimeOne's Complaint. (*See* Mot., ECF No. 13.) Stop N Shop insists that the state court hearing the Roberts State Court Action, not this Court, should determine whether Stop N Shop is entitled to a defense and indemnity from PrimeOne. (*See id.*)

Stop N Shop raises three arguments in its motion:

- The Court should dismiss PrimeOne's Complaint under Federal Rule of Civil Procedure 12(b)(3) because this Court is an improper venue;

- The Court should "remand" this action to the Wayne County Circuit Court under either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1404(c) for the convenience of the parties; and

- The Court should decline to exercise Declaratory Judgment Act jurisdiction under the 28 U.S.C. § 2201(a).

The Court held a hearing on Stop N Shop's motion on February 13, 2020.

## II

### A

At the hearing on the motion to dismiss, Stop N Shop conceded that there is no merit to its argument that this Court is an improper venue. Stop N Shop also acknowledged that there is no basis for the Court to "remand" this action to the Wayne County Circuit Court pursuant to 28 U.S.C. § 1404(a) or (c). Thus, Stop N Shop's only argument remaining is that the Court should decline to exercise jurisdiction over PrimeOne's request for declaratory relief.

In relevant part, the Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction ..., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration

shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

In *United Specialty Insurance Company v. Cole's Place, Inc.*, 936 F.3d 386 (6th Cir. 2019), the United States Court of Appeals for the Sixth Circuit recently explained the factors that courts should consider when determining whether to exercise jurisdiction under the Declaratory Judgment Act when there is a related action pending in state court:

> This court considers five factors (the "*Grand Trunk* factors") to determine whether the exercise of Declaratory Judgment Act jurisdiction is appropriate:
>
> (1) [W]hether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.
>
> *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citations omitted). Furthermore, this court has divided the fourth factor into three sub-factors:
>
> (1) [W]hether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

> > (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.
>
> [*Scottsdale Ins. Co. v.*] *Flowers*, 513 F.3d [546,] 560 [(6th Cir. 2008)] (quoting *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 814–15 (6th Cir. 2004)).
>
> Although the above formulation indicates the court should balance the five factors, "we have never indicated" the relative weights of the factors. *Id.* at 563. Instead, "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014). In reviewing a district court's entry of a declaratory judgment, therefore, we keep in mind that "[t]he essential question is always whether [the] district court has taken a good look at the issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair." *Id.* (citation omitted). "District courts must be afforded substantial discretion to exercise jurisdiction 'in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and [the] fitness of the case for resolution, are peculiarly within their grasp.'" *Flowers*, 513 F.3d at 554 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)).

*Id.* at 396.

**B**

The Court concludes that the best time to conduct a thorough analysis of the *Grand Trunk* factors is after the Michigan Court of Appeals decides Jaber's currently-pending appeal of his second-degree murder conviction. As explained below, the decision in that appeal could have a substantial impact upon the factual overlap between

this action and the Roberts State Court Action. And that potential overlap, in turn, is a key component of the *Grand Trunk* analysis. *See id.* at 399.

One of the primary issues in both this action and the Roberts State Court Action is: did Jaber shoot Roberts in self-defense? Because both actions will focus closely on that issue, there may be potential for substantial overlap in the factual questions presented and to be decided in both actions.

But the jury's verdict in Jaber's criminal trial – now on appeal – could potentially eliminate the need for this Court and the state court hearing the Roberts State Court Action to decide questions concerning whether Jaber acted in self-defense. The jury in Jaber's criminal trial convicted Jaber of second-degree murder, and, given that Jaber raised a self-defense defense, the jury's guilty verdict necessarily included a finding that Jaber did not act in self-defense. If that verdict stands on appeal, and it if it is entitled to preclusive effect in this action and in the Roberts State Court Action, then neither this Court nor the state court in the Roberts State Court Action will have any need to inquire into factual and legal issues arising out of Jaber's claim of self-defense. However, if the jury's verdict is vacated on appeal, then this Court and the state court hearing the Roberts State Court Action will both have to inquire into factual and legal issues related to whether Jaber acted in self-defense. Accordingly, the resolution of Jaber's criminal appeal may have a substantial impact on the extent of overlap between this action and the Roberts State Court Action – which, as described above, is a key consideration under *Grand Trunk*.

Simply put, the Court will best be able to weigh the *Grand Trunk* factors after Jaber's criminal appeal is resolved. Therefore, the most prudent course of action is to wait until that appeal is decided before determining whether to exercise jurisdiction over this declaratory judgment case. Such a delay will not cause either party prejudice. Indeed, as counsel conveyed to the Court during a telephonic status conference after the hearing, the state court has also decided to stay the Roberts State Court Action pending the resolution of Jaber's criminal appeal. PrimeOne is therefore not expending any funds defending the Roberts State Court Action at this time, nor is PrimeOne in danger of having to pay out a judgment in that case before this Court decides whether to exercise jurisdiction over this action. Thus, a stay will not increase PrimeOne's defense costs in this matter.

Once the Michigan Court of Appeals resolves Jaber's criminal appeal, the Court will allow Stop N Shop to renew its motion to dismiss. In briefing on the renewed motion, both parties should address the impact of the Court of Appeals' decision on the *Grand Trunk* factors. In addition, if Jaber's conviction is affirmed on appeal, in connection with a renewed motion to dismiss, both parties should address (1) whether that conviction is entitled to preclusive effect in this action and the Roberts State Court Action and (2) how the answer to that question impacts the Court's analysis under the *Grand Trunk* factors.

## III

For all of the reasons stated above, the Court **DENIES** Stop N Shop's motion to dismiss (ECF No. 13) **WITHOUT PREJUDICE**. In addition, the Court **STAYS** this action pending resolution of Jaber's state-court appeal of his criminal conviction. The parties are **DIRECTED** to file a copy of the Michigan Court of Appeals' ruling on Jaber's appeal on the docket in this action when that decision is issued. The Court will thereafter convene a telephonic status conference with counsel to discuss a briefing schedule for a renewed motion to dismiss.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: February 26, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 26, 2020, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764